DECUIR, Judge.
This appeal involves the interpretation of contractual obligations. Defendant, Harold Lejeune, appeals the trial court’s judgment which ordered him to continue to pay Hazel Troselair Lejeune her community portion of his retirement benefits.
FACTS
Mr. and Mrs. Lejeune married on April 20, 1960. During the marriage, Mr. Lejeune worked at the St. Landry Parish Assessor’s office. He retired from the Assessor’s office on December 31, 1984, with 31 years of service. On January 1, 1985, Mr. Lejeune began to receive $2,345.65 per month from the Louisiana Assessor’s Retirement Fund. However, the assessor agreed to retain the services of Mr. Lejeune as a consultant to the St. Landry Parish Assessor. Mrs. Le-jeune was aware that her husband worked as a consultant.
, To assure that he could receive a retirement check while performing consulting services for the Assessor’s office, Mr. Lejeune appeared before the Board of Ethics for Elected Officials and explained the situation. By letter dated June 27, 1986, Peter Wright, a board representative, advised Mr. Lejeune that “the board concluded that your resuming performance of your business’s contract work with the St. Landry Parish Assessor’s Office would not violate any provision of the Code of Governmental Ethics.” Likewise, an assessor, Rhyn Duplechain, obtained an opinion from the district attorney of St. Landry Parish that the assessor’s contract with Mr. Lejeune did not “violate any rules applying to retirement by Assessor’s office personnel.” For almost 3 years after his retirement from the Assessor’s office, Mr. Lejeune continued to work as a consultant for the assessor, while also drawing retirement income.
Mrs. Lejeune filed a petition for legal separation on March 18, 1985, on the grounds of cruelty. In her petition, Mrs. Lejeune sought a preliminary injunction to prevent Mr. Lejeune from disposing of any community property including her undivided interest in the retirement funds.
On August 13, 1985, the spouses entered into a joint stipulation concerning the retirement benefits. The stipulation provides in part:
“3.
The formula which represents the correct distribution of the community interest of Hazel Marie Troselair Lejeune is expressed as follows:
24.67/31.0 x 2947.52 = $2,345.65/2 = $1172.82 monthly attributable to Hazel Marie Troselair Lejeune.
*215 4.
That Harold Lejeune contractually obligates himself to facilitate the remittance of $1,172.82 monthly of the funds due him from the Louisiana Assessor’s Retirement Fund payable directly to Hazel Marie Trosclair Lejeune and not to take any action which would divest the said Hazel Marie Trosclair Lejeune from the monthly receipt of these payments.
5.
Hazel Marie Trosclair Lejeune acknowledges and admits that considering the fact that she will be receiving $1172.82 monthly from the Louisiana Assessor’s Retirement Fund, she will not be “in need” and she •will not be entitled to, nor will she seek alimony pendente lite, even if other circumstances change, so long as she continues to receive the retirement money.
6.
That the obligation of Harold Lejeune expressed herein is contractual in nature and is not a mere recital and may be enforced by specific performance or other legal relief.”
On August 13, 1985, the trial court rendered a judgment of separation based on mutual fault, which was supported by the testimonial evidence at the hearing on the judgment of separation. In reliance on the judicially recognized stipulation Mrs. Le-jeune acquiesced in mutual fault. Additionally, the judgment recognized “a partial division of the community property allocating to Hazel Marie Trosclair Lejeune her community interest in the retirement account received by Harold Lejeune from the Louisiana Assessor’s Retirement Fund,” in the amount of $1,172.82.
In compliance with the trial court’s partition, Mr. Lejeune advanced Mrs. Lejeune $1,172.82 out of the retirement check, which he received in the middle of the month. For some reason, after paying Mr. Lejeune for more than two years, the Louisiana Assessor’s Retirement Fund sought an opinion from the attorney general on whether Mr. Lejeune was eligible to receive retirement benefits while he continued to work in the Assessor’s Office as a special consultant. The attorney general’s office rendered an opinion on August 27, 1987, “that a retiree of the Fund who is performing work for the office from which he retired pursuant to a contract with that office is not eligible to receive his retirement benefit from the Fund while performing such work.” The Fund immediately notified Mr. Lejeune that he was ineligible and shortly thereafter stopped the monthly payments. The value of Mr. Lejeune’s retirement account continues to increase.
To avoid litigation of alimony pendente lite, Mr. Lejeune continued payments of $1,172.82 monthly until the judgment of divorce in January of 1991. On May 24, 1991, Mrs. Lejeune filed this rule praying that either: 1) Mr. Lejeune force the Fund to pay Mrs. Lejeune $1,172.82 monthly; or 2) Mr. Le-jeune himself pay Mrs. Lejeune $1,172.82; or, alternatively, 3) Mr. Lejeune should pay post divorce alimony.
In a judgment filed April 21,1992, the trial court enforced “the contractual obligation of Harold Lejeune to facilitate the remittance of $1,172.82 monthly to Hazel Marie Trosclair Lejeune.” The judgment ordered Mr. Le-jeune to pay Mrs. Lejeune $1,172.82 per month from the date of the discontinuance of these monthly payments, which was January 3, 1991, and $1,172.82 monthly thereafter, or, in the alternative, to pay her the amount due in arrears and prospectively to take such action as may be necessary to have the Louisiana Assessor’s Retirement Fund remit directly to Hazel Marie Trosclair Lejeune the sum of $1,172.82 per month.”
INTERPRETATION OF CONTRACT
Mr. and Mrs. Lejeune seek different interpretations of the contractual stipulations previously quoted. Our Civil Code provides that interpretation of a contract is the determination of the common intent of the parties. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent. The words of a contract must be given their generally prevailing meaning. Each provision in a con *216 tract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA — C.C. Arts. 2045-2047, 2050. It should be further noted that in the chapter on interpretation of contracts, our Civil Code says that equity is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another. LSA C.C. Art. 2055.
Reading all the contractual stipulations in light of the other provisions, we conclude that the trial courts findings are correct and affirm the judgment. A clear reading of the contract indicates that defendant contractually obligated himself to facilitate the remittance of $1,172.82 per month and not to take any action which would divest the plaintiff of the receipt of those payments. This was the common intent of the parties. The contractual obligations of Harold Lejeune requires him to do whatever is necessary to insure the payments to Hazel Marie Lejeune.
Defendant argues that the trial court was in error in concluding that he was legally or contractually bound not to continue his employment in the Assessor’s office. We find that the defendant has erroneously stated the proposition. A careful reading of the record reflects that the trial judge did not find that Harold Lejeune could not go back to work at the Assessor’s office, but rather that he was responsible to pay his wife the dollar amount that he agreed to pay her. The trial judge further found that on equitable grounds, the wife’s right was superior.
We affirm the judgment of the trial court. All costs in the trial and appellate courts are assessed against defendant-appellant Harold Lejeune.
AFFIRMED.
GUIDRY, J., concurs and assigns written reasons.
STOKER, J., and CULPEPPER, J. Pro Tem., dissent and assign reasons.